**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BERTIN STEEL PROCESSING, INC.** | ) | **CASE NO. 1:02CV1669** |
| | ) | |
| Plaintiff, | ) | **JUDGE WELLS** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM IN OPPOSITION TO** |
| **UNITED STATES CORP., et al.** | ) | **PLAINTIFF'S SECOND MOTION TO** |
| | ) | **COMPEL DISCOVERY AND FOR** |
| Defendants. | ) | **SANCTIONS AGAINST KOBE** |

Plaintiff's Motion to Compel is little more than an attempt to shift the blame onto Defendants for Plaintiff's own failure to properly request documents from third parties through a subpoena duces tecum within the discovery period. Plaintiff's Motion is without merit and should be denied by the Court for at least the following reasons:

- Plaintiff's Motion to Compel seeks to compel production of a non-party's documents under Fed. Civ.R. P. 34 when it is well established that production of documents from non-parties for discovery purposes can only be compelled by a subpoena duces tecum issued under Fed. Civ.R. P. 45.

- Plaintiff's Motion to Compel violates the parties' express agreement that production of certain documents from Japan would be made in "full and complete satisfaction of ALL of Bertin's outstanding written discovery."

- Plaintiff's Motion to Compel is untimely as it was filed approximately 1½ months after the Discovery Cut-Off Deadline.

{K0133450.1}

**BACKGROUND**

A.  <u>The Parties' Relation to Plaintiff's Allegations</u>:

Defendant Kobe Delaware, Inc. ("KDI") is a Delaware corporation with its headquarters in New York, New York.  Defendant Kobe Steel, Inc. ("Kobe") is a Japanese corporation, with its headquarters in Tokyo, Japan, and which does not conduct business in the United States.  (Takeuchi Declaration, attached as Exhibit A).

Plaintiff's allegations in this case do not arise from any dealings with Kobe or KDI.  Instead, Plaintiff commenced this litigation based on contractual agreements and/or perceived misdeeds of USS/Kobe Steel Company ("USS/Kobe")—an Ohio general partnership.  Neither KDI nor Kobe was or is a partner in USS/Kobe.  Instead, the general partners of USS/Kobe were USS Lorain Holding Company, Inc. and Kobe/Lorain, Inc. ("KLI"), two Ohio corporations which were merged out of existence in August of 1999.  KLI was a wholly owned subsidiary of KDI.  The majority shareholder of KDI is Kobe Steel USA Holdings, Inc., which is a wholly owned subsidiary of Kobe.  As such, KDI and Kobe are respectively twice and four times removed from the party which entered into the contract at issue in this case.

B.  <u>Plaintiff's Conduct in the Discovery Process</u>:

Plaintiff responded to Defendants' document requests by insisting that it only had the obligation to produce its documents for inspection as they were maintained in the ordinary course of business.  This resulted in a production that amounted to little more than an elaborate game of hide 'n seek.  Plaintiff made its documents available for inspection in an unventilated warehouse in the most disorganized fashion which it could conceive, all as shown in the photos attached as Exhibit B.

2

C.        <u>Defendants' Discovery Responses</u>:

In response to Plaintiff's document requests, Kobe and KDI made their documents available for inspection at their respective headquarters. (<u>See</u> Letter from Wallace to DeRoche of August 28, 2003, a copy of which is attached as Exhibit C.) Plaintiff, nonetheless, took the position that Kobe and KDI had to transport their corporate and business records from their headquarters for inspection in Northern Ohio at the convenience of Plaintiff's counsel. Indeed, Plaintiff filed its first Motion to Compel Production of Documents seeking an order from this Court forcing the Defendants to transport their documents for inspection in Northern Ohio.

In their opposition to Plaintiff's first Motion to Compel, Defendants explained that Plaintiff's counsel did not have to travel himself to inspect the documents, and that he could instead send an associate of his or even utilize the assistance of local counsel to achieve this goal. (<u>See</u> Memorandum in Opposition to Plaintiff's Motion to Compel and for Sanction, ECF Document No. 48). Plaintiff's counsel insisted that it would be costly for his client to utilize the services of local counsel and insisted that Kobe should instead scan all of its documents into .pdf format and have them transported or e-mailed for his inspection in northern Ohio.[1] As surely is the case, it would be meaningless for a company to invest in protecting its corporate records and trade secrets, if it were to simply scan all of its documents into .pdf format and take the risk of having them transported or e-mailed overseas.

---

[1] Ironically, while complaining about costs to his client, Plaintiff's counsel has invested considerable time and energy engaging in discovery disputes and the filing of motions to compel and replies in support of such motions. Indeed, Plaintiff could have been more cost-efficient had it utilized local counsel to conduct the inspection on its behalf than drag the parties and the Court into unnecessary discovery disputes.

3

{K0133450.1}

D.  The Parties' Agreement:

Upon reviewing Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel, Plaintiff's counsel contacted Defendants' counsel and sought to work out a deal over the discovery dispute. The parties agreed that in lieu of conducting the inspection at Defendants' headquarters, Plaintiff would narrow the scope of its requests, and Defendants would have those documents transported from Japan and produced to Plaintiff in the United States. The parties agreed that this production would be in full satisfaction of ALL of Plaintiff's discovery requests:

Counsel for Kobe and KDI:

This will confirm that the documents we jointly identified during our telephone conversation last week will be available at my office after 3:00 today provided you first send me written confirmation of our agreement that, in consideration for such production, Bertin will (1) promptly withdraw its motion to compel, and (2) **acknowledges that this production is made in full and complete satisfaction of ALL of Bertin's outstanding written discovery.** Please reply to this e-mail with your confirmation if you wish to go forward with the production.

\* \* \*

Counsel for Plaintiff:

This will confirm that if the Kobe Defendants produce all of the documents that you agreed to produce during our discussion last week, then Bertin will promptly withdraw its motion to compel, and further Bertin will accept such production **in satisfaction of all pending document requests**. See you this afternoon at 3:00.

\* \* \*

Counsel for Kobe and KDI:

And interrogatory answers?

\* \* \*

Counsel for Plaintiff:

yes.

4

(E-mail Correspondence between DeRoche and Wallace of October 27, 2003, a copy of which is submitted herewith as Exhibit D) (Emphasis Added).

Defendants fulfilled their obligation under the agreement and produced all of the agreed upon documents to Plaintiff's satisfaction, and Plaintiff withdrew its first Motion to Compel evidencing its satisfaction of the completeness of the production. (See ECF Doc. 53.)

E.  Plaintiff's Counsel's Conduct at the Deposition of Mr. Takeuchi and the Fabrication of the New Discovery Dispute:

On October 29, 2003, Plaintiff conducted the deposition of Mr. Tadashi Takeuchi in Detroit, Michigan. Mr. Takeuchi is employed by Kobe Steel USA, Inc. ("KSU"), which is a subsidiary of Kobe Steel USA Holdings, Inc., which in turn is a subsidiary of Kobe. (Takeuchi Decl., ¶ 3-4.)

Mr. Takeuchi's primary language is Japanese, and he is somewhat conversant in English. He does not, however, have any translation experience. At the deposition of Mr. Takeuchi, Plaintiff's counsel handed the witness documents drafted in Japanese and asked him to translate the documents into English—a process that was not easy for Mr. Takeuchi and was taking a long time. Defendant's counsel objected and tried to protect the witness from harassment, when Plaintiff's counsel responded "I'm going to clarify his answer. Just shut the hell up." (Takeuchi Depo., p. 21, attached as Exhibit E.)[2] From there, Plaintiff's counsel continued by complaining about Defendants' production of documents. Indeed, Plaintiff's counsel even took the position that

---

[2] See Local Rule 30.1(a) ("Witnesses, parties, and counsel must conduct themselves at depositions in a temperate, dignified, and responsible manner"); Local Rule 30.1(b)(2) ("Opposing counsel and the deponent must be treated with civility and respect").

Defendant Kobe had an obligation to produce documents from KSU that were maintained by KSU in Detroit, Michigan. In fact, Plaintiff's counsel took this position despite the parties' prior express agreement that production of the narrowed down documents <u>from Japan</u> would be done in full satisfaction of ALL of Plaintiff's discovery requests.

F.  <u>The Relationship between Kobe and KSU</u>:

The Court should note that this is not a situation where Kobe obtained favorable documents from KSU and then failed to produce unfavorable documents. On the contrary, Kobe did not obtain any documents from KSU, regardless of how helpful those documents may be to Kobe's defense in this litigation as Kobe and KSU are two separate corporations, managed and run independently of each other. (Takeuchi Decl., ¶ 6-7.)

Defendant Kobe is a large Japanese corporation, with twenty (20) subsidiary/affiliated corporations in the United States. (Takeuchi Decl, ¶ 4.) KSU is not a subsidiary of Kobe. (<u>Id.</u>) Instead, KSU is a subsidiary of Kobe Steel USA Holdings, Inc., which in turn is a subsidiary of Kobe. (<u>Id.</u>)

KSU is incorporated in Delaware, and Kobe is incorporated in Japan. (<u>Id.</u>, ¶ 5.) KSU maintains its offices in New York, New York and Detroit, Michigan, and Kobe maintains its main offices in Tokyo, Japan. (Takeuchi Decl., ¶ 5.) The two corporations are managed independently from different countries on different continents. (<u>Id.</u>) Each corporation conducts its own business transactions, and each maintains its own separate financial accounts. (<u>Id.</u>, ¶6.)

KSU has no connection to the transaction between Plaintiff and USS/Kobe that is

6

{K0133450.1}

the subject of the litigation in this case, and it will not benefit if Kobe were to obtain a favorable result in the litigation. (Takeuchi Decl., ¶ 7.) Additionally, Kobe has no control over where KSU maintains its documents or how it uses such documents, and each corporation maintains its own documents separately in the ordinary course of business. (Takeuchi Decl., ¶ 8.) Indeed, the two corporations do not even share or exchange documents with each other in the ordinary course of business. (Id.)

G.     Plaintiff's Failure to Subpoena KSU's Documents Prior to the Discovery Cut-Off Deadline:

Although Plaintiff claims that it has newly discovered the existence of KSU, this is the result of its own failure to conduct full discovery in a diligent manner. Although Plaintiff filed its complaint on July 19, 2002,[3] it waited an entire year until July 11, 2003 to serve its First Set of Interrogatories or First Request for Production of Documents on Defendants—about a month before the August 25, 2003 Discovery Cut-Off Deadline.[4] Even then, Plaintiff failed to propound any interrogatory about the corporate organizational structure of Kobe as it related to subsidiary/affiliate companies and failed to request a copy of Kobe's corporate organizational structure. (See Plaintiff's First Set of Interrogatories; Plaintiff's First Request for Production of Documents, copies of which are attached to Plaintiff's Motion to Compel.)

Having failed to timely subpoena documents from KSU, Plaintiff now desires to shift the blame onto Defendants in an attempt to obtain documents outside of the Discovery Cut-Off Deadline. It would indeed be unthinkable that a large corporation

---

[3] Plaintiff's complaint was filed in state court, and it was removed to federal court on August 23, 2002.
[4] By agreement of counsel, the parties extended the Discovery Cut-Off Deadline until September 30, 2003.

7

{K0133450.1}

with multiple subsidiary/affiliate companies would have to produce documents from every single subsidiary/affiliated company in response to a Rule 34 Request for Production of Documents.

In essence, Plaintiff's counsel seeks to ignore the separate legal entities for discovery purposes just as he does with respect to the substance of his client's claims. There is no legal basis to permit him to do so, however, in the entire context.

## **LAW AND ARGUMENT**

Under Plaintiff's argument, if a party were to sue General Electric and serve it with a request for production of documents under Rule 34, General Electric is duty bound to not only produce its documents, but also the documents of NBC as well as the documents of each local NBC station around the country. This argument is clearly untenable. Here, KSU is not a subsidiary of Kobe. Instead, KSU is a subsidiary of Kobe Steel USA Holdings, Inc., which in turn is a subsidiary of Kobe, and both companies are managed and run independently of each other. (See Takeuchi Decl., ¶¶ 3-8.)

**I.  KOBE AND KDI HAVE PRODUCED ALL RELEVANT RESPONSIVE DOCUMENTS WITHIN THEIR POSSESSION, CUSTODY OR CONTROL.**

The Court should note that Kobe has made available for inspection tens of thousands of pages of documents, (See Exhibit C), but Plaintiff chose not to inspect them (See ECF Document No. 48). Still, Kobe has produced hard copies of more than 2200 pages of documents to Plaintiff in this case, including documents that were transported from Japan solely for the convenience of Plaintiff's counsel and after agreeing that such production would be in full satisfaction of all of Plaintiff's discovery

requests.  Despite Kobe's faithful and full cooperation in the discovery process, Plaintiff argues that Kobe should have produced KSU's documents in response to its document requests.

Rule 34 of the Federal Rules of Civil Procedure permits a party to serve document requests on "any other **party**" to inspect and copy any designated documents which are in the possession, custody or control of the party upon whom the request is served.  Fed. R. Civ. P. 34(a).  Indeed, it is well established that Rule 34 cannot be used to obtain a non-party's documents, and that "[p]roduction of documents from non-parties for discovery purposes can only be compelled by a subpoena duces tecum issued under Rule 45, Federal Rules of Civil Procedure."  Nalco Chemical Co. v. Hydro Technologies, Inc., 148 F.R.D. 608, 619 (E.D.Wis. 1993) (citing United States v. Allen, 578 F.Supp. 468, 472 (W.D. Wis. 1982).

Contrary to Plaintiff's bold assertions that a corporation must produce documents maintained by a subsidiary/affiliated corporation, the party seeking production of the documents bears the burden of proving that the responding party has control over the requested documents.  See United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452.  The determination is fact-specific, and the Court weighs a whole number of factors, "including the corporate structures of the entities involved, the financial relationship between them, the overlap of directors and officers, the non-party's connection to the transaction at issue, the issue of whether the non-party will receive the benefit of a favorable litigation outcome, and the ability of the party from whom documents are sought to obtain the documents upon demand."  Playboy Entertainment Group., Inc. v. United States, U.S. Dist. Court of Delaware No.

96-94-JJF, 1997 U.S. Dist. Lexis 22297, copy attached as Exhibit F.

Here, KSU is not a subsidiary of Kobe, but is instead a subsidiary of Kobe USA Holdings, Inc., which in turn is a subsidiary of Kobe. (Takeuchi Decl., ¶ 4.) They are incorporated in different countries, and each maintains its independence. (Id., ¶¶ 4-6.) In fact, KSU and Kobe are managed independently from two different countries on different continents. (Id., ¶ 6.) Each corporation conducts its own business transactions, and each maintains its own separate financial accounts. (Id., ¶ 8.)

KSU and Kobe maintain their own documents separately, and the two corporations do **not** share or exchange documents with each other in the ordinary course of business. (Takeuchi Decl., ¶ 8.) Additionally, KSU is not connected to the contract at issue in this litigation, and it will not benefit if Kobe were to receive a favorable result in this litigation. (Id., ¶ 7.)

Plaintiff's emphasis on Mr. Takeuchi's statement that he would provide documents to Kobe if asked is clearly misplaced. Mr. Takeuchi testified that he didn't "know whether Kobe Steel has the right to ask me for such documents." (Takeuchi Depo., p. 83, attached as Exhibit E.) Mr. Takeuchi never testified that Kobe had the right to obtain KSU's documents "upon demand." Here, KSU is an independent corporation that is managed on its own accord. It had no involvement in the transaction at issue in this case, and will not benefit if Kobe were to succeed in this litigation. An examination of the facts clearly shows that Kobe had no obligation to produce documents from KSU in response to Plaintiff's document requests.

## II. PLAINTIFF'S MOTION TO COMPEL VIOLATES THE PARTIES' AGREEMENT.

Plaintiff's Motion to Compel is not only an obvious attempt to obtain documents

through Kobe that it failed to subpoena from KSU within the discovery period, but it is a flagrant violation of the parties' express agreement that Kobe's production of documents from Japan would be in full satisfaction of ALL of Plaintiff's discovery requests. Here, Kobe waived its right to only have its documents inspected in Japan in consideration of Plaintiff's agreement to narrow the scope of its document requests and to forever accept the documents as full satisfaction of all of its discovery requests. (See Agreement between Counsels, attached as Exhibit D.)

At the time the parties reached their agreement, Plaintiff was well aware of the existence of multiple subsidiaries of Kobe. In fact, in its first Motion to Compel, Plaintiff stated "Kobe Steel, Ltd. apparently believes that it can hold itself out as a partner, while secretly setting up multiple layers of shell subsidiaries, and thereby insulate itself from partnership liability." (Plaintiff's first Motion to Compel, p. 4.) Nonetheless, there was no question about the fact that the documents that would be produced per the parties' agreement would only be coming from Japan, and nowhere else. In fact, despite referencing the "multiple layers of shell subsidiaries," Plaintiff's first Motion to Compel only dealt with documents from Japan and New York.

Plaintiff only concocted its arguments here after realizing that it has failed to timely subpoena documents from KSU, and it is now attempting to obtain those documents from Kobe under the guise that such documents should have been produced by Kobe.

### III. PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED AS UNTIMELY.

Plaintiff did not file the instant Motion to Compel until November 13, 2003, approximately 1½ months after the September 30, 2003 extended Discovery Cut-Off

Deadline.  Local Rule 37.1(b) provides that "[n]o discovery shall be brought to the attention of the Court, and no motion to compel may be filed, more than ten (10) days after the discovery cut-off date."   Additionally, Local Rule 7.1(h) provides that "[a]ny motion (other than motions made during hearings or at trial) served and filed beyond the motion deadline established by the Court may be denied **solely** on the basis of the untimely filing."  (Emphasis added).  Here, Plaintiff failed to timely file its Motion to Compel, and the Court should deny the motion as untimely.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Second Motion to Compel Discovery and for Sanctions.

Respectfully submitted,

  */s/ David H. Wallace*
Stephen M. O'Bryan (#0009512)
David H. Wallace (#0037210)
TAFT, STETTINIUS & HOLLISTER LLP
Suite 3500, BP Tower
200 Public Square
Cleveland, Ohio 44114
Telephone: (216) 241-2838
Facsimile: (216) 241-3707
E-mail: sobryan@taftlaw.com
E-mail: dwallace@taftlaw.com


L. Clifford Craig (#0024859)
TAFT, STETTINIUS & HOLLISTER LLP
425 Walnut Street
Cincinnati, Ohio 45202-3957
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
E-mail: craigc@taftlaw.com

*Attorneys for Kobe Steel, Ltd.*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2003, a copy of the foregoing Memorandum in Opposition to Plaintiff's Second Motion to Compel Discovery and for Sanction was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        */s/ David H. Wallace*
        David H. Wallace (#0037210)